IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-22956-MER |
| KIMBERLY YUMARA VIVEROS ) | |
| SSN / ITIN: xxx-xx-7842 ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| DAVID V. WADSWORTH, ) | |
| as Chapter 7 Trustee ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | |
| ) | |
| KIMBERLY YUMARA VIVEROS ) | |
| ) | Signed/Docketed |
| Respondent. ) | June 7, 2011 |

**ORDER**

THIS MATTER comes before the Court on the *Trustee's Motion to Compel Turnover of Property of the Estate* (the "Motion")[1] filed by David V. Wadsworth (the "Trustee") and the *Objection to Trustee's Motion to Compel Turnover of Property of the Estate* (the "Objection")[2] filed by Kimberly Yumara Viveros (the "Debtor").

**JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(E) and (O) as it concerns a request for turn over of property of the estate and liquidation of the assets of the estate.

**PROCEDURAL AND FACTUAL BACKGROUND**

On May 25, 2010, the Debtor filed her Chapter 7 bankruptcy petition. Pursuant to 11 U.S.C. § 341,[3] she attended her Meeting of Creditors on June 30, 2010. About a week later, the

---

[1] See Motion filed November 16, 2010 (Docket #21).

[2] See Objection filed November 20, 2010 (Docket #24).

[3] Unless otherwise noted in the text, statutory references are to Title 11 of the United States Code.

Debtor filed an Amended Schedule C (the "First Amended Schedule") and the *Discharge of Debtor* order entered shortly thereafter.[4]

On November 2, 2010, the Trustee filed an application to employ the law firm of Timothy J. Lamb, P.C. as attorneys for the Trustee (the "Application").[5] On November 8, 2010, the Debtor filed her second Amended Schedule C (the "Second Amended Schedule").[6] On November 16, 2010, the Trustee filed the instant Motion. The Debtor filed an objection to both the Application and Motion.[7] On January 11, 2011, the Court conducted a preliminary hearing on the Trustee's Application and Motion. The Court approved the Application and set the Motion for an evidentiary hearing.

## SUMMARY OF THE PLEADINGS

*The Trustee's Motion*

The Motion seeks turnover of a 2003 Audi A4 (the "Audi") and 2003 Lexus ES300 (the "Lexus") (collectively, the "Vehicles"). Based on his consideration of exemptions and secured debts, the Trustee alleges there is approximately $6,244.00 in equity in the Vehicles. The Trustee further alleges the Debtor has not provided the Trustee with evidence of full insurance coverage, including evidence of an insurance policy listing the Trustee or the bankruptcy estate as a loss payee. Pursuant to § 541, the Trustee requests the Court order the Debtor immediately to turn over the Vehicles to the Trustee so the Trustee may liquidate them, pay any amounts owing to the Debtor based on her claim of exemption, and maintain any surplus for the benefit of the estate.

*The Debtor's Objection and Response*

The Debtor has not specifically addressed the Trustee's allegations concerning value, exemptions, secured debt, equity, or insurance. Rather, the Debtor argues the Trustee is barred by the doctrine of laches because he waited four months after the date of the Meeting of Creditors and before filing the Application, and four and one-half months after the date of the Meeting of Creditors and before filing the Motion. The Debtor also faults the Trustee regarding his questioning at the Meeting of Creditors. Specifically, the Debtor asserts the Trustee only

---

[4] See First Amended Schedule C filed July 6, 2010 (Docket #12) and Discharge of Debtor issued September 8, 2010 (Docket #14).

[5] See Application filed November 2, 2010 (Docket #16).

[6] See Second Amended Schedule C filed November 8, 2010 (Docket #19).

[7] See Objection to Application filed November 15, 2010 (Docket #20) and Objection to Motion filed November 20, 2010 (Docket #24). Although the Debtor's Objection to the Motion focused primarily on the Application, the Debtor supplemented her Objection in her *Debtor's Response to Certificate of Contested Matter and Request for Hearing* (the "Response"). See Response filed December 20, 2010 (Docket #27).

raised the issue of amending Schedule C to claim the proper exemption for the Audi and failed to ask questions regarding the Lexus or equitable ownership issues. According to the Debtor, the Debtor's brother, Alex Viveros, is the equitable owner of the Lexus because, at all times material to this matter, he has been in the possession of the Lexus in California, has made all car payments, and maintains insurance on the Lexus. The Debtor contends title to the Lexus was placed in her name only as an accommodation for her brother (because he did not qualify to purchase the Lexus on credit on his own).

*The Debtor's Schedules and Amendments*

With respect to the Vehicles (and one other vehicle not subject to the Motion), the Debtor's original Schedules, First Amended Schedule, and Second Amended Schedule disclose the following:

|  | **2003 Audi A4** | **2003 Lexus ES 300** | **2000 Honda Accord** |
|---|---|---|---|
| **Original Schedule C (filed 5/25/10)** | Location: 9850 Federal Blvd Lot #228, Federal Heights CO 80260<br><br>Value: $5,245<br><br>Exemption: $1,850 exemption claimed per NEB. REV. STAT. § 25-1552.<br><br>Schedule D debt: no debt. | Location: 9850 Federal Blvd Lot #228, Federal Heights CO 80260<br><br>Value: $9,865<br><br>Exemption: $0 claimed per NEB. REV. STAT. § 25-1552.<br><br>Schedule D debt: $4,046 owed to WFS Financial / Wachovia. | Location: 9850 Federal Blvd Lot #228, Federal Heights CO 80260<br><br>Value: $2,825<br><br>Exemption: $0 claimed per NEB. REV. STAT. § 25-1552.<br><br>Schedule D debt: $3,195 owed to Harris N.A. |
| **First Amended Schedule C (filed 7/6/10)** | Exemption: $5000 exemption claimed per COLO. REV. STAT. § 13-54-102(1)(j)(l). | Exemption: $0 exemption claimed per COLO. REV. STAT. § 13-54-102(1)(j)(l). | Exemption: $0 exemption claimed per COLO. REV. STAT. § 13-54-102(1)(j)(l). |
| **Second Amended Schedule C (filed 11/8/10)** | Exemption: $5000 exemption claimed per COLO. REV. STAT. § 13-54-102(1)(j)(l). | Exemption: $0 exemption claimed per COLO. REV. STAT. § 13-54-102(1)(j)(l). | Exemption: $0 exemption claimed per COLO. REV. STAT. § 13-54-102(1)(j)(l). |

**DISCUSSION**

**A.     Laches**

As is noted above, the Debtor argues the doctrine of laches bars the Trustee from seeking the turnover of the Vehicles. The Debtor further argues laches applies because the Trustee did not address the issues involved in this matter at the Meeting of Creditors.

In *Bristol Co., LP v. Osman*, the Colorado Court of Appeals stated,

> A trial court may apply laches when the plaintiff unreasonably and inexcusably delays bringing a legal claim and the delay prejudices or injures the defendant in some material way. *Aukerman*, 960 F.2d at 1028-29. The prejudice to the defendant may be either economic or evidentiary. Economic prejudice to a defendant may include liability for greater damages or the loss of monetary investment that a timelier lawsuit would likely have prevented. Evidentiary prejudice may include a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of witnesses, or the adverse effect that the passage of time has on witnesses' memories of relevant events. *Aukerman*, 960 F.2d at 1033. A trial court must balance, on the one hand, the length of the delay in filing the infringement suit and the plaintiff's explanation for the delay, against, on the other hand, the prejudice to the defendant resulting from the delay. Thus, it involves a weighing of equities and depends on the trial court's evaluation of the circumstances. *Giddens v. Isbrandtsen Co.*, 355 F.2d 125, 127 (4th Cir. 1966).[8]

There is no statutory time limit for a Trustee to file a motion to compel turnover. However, in *People v. Scoggins*, the Colorado Court of Appeals has stated, "[e]ven without a time limit . . . the equitable doctrine of laches may be asserted to 'deny relief to a party whose unconscionable delay in enforcing his rights has prejudiced the party against whom relief is sought.'"[9]

Similarly, the Third Circuit Court of Appeals addressed laches in the context of a Trustee's turnover claims:

> The Bankruptcy Code does not impose a statute of limitations on turnover claims arising under these provisions. *In re Midway Airlines, Inc.*, 221 B.R. 411, 458 (Bankr. N.D. Ill. 1998) ("Bankruptcy Code does not contain a statute of limitations for turnover actions pursuant to § 542"); *In re Bookout Holsteins, Inc.*, 100 B.R. 427, 432 (Bankr. N.D. Ind. 1989) (same); *In re De Berry*, 59 B.R. 891, 898 (Bankr. E.D.

---

[8] *Bristol Co., LP v. Osman*, 190 P.3d 752, 755 (Colo. App. 2007).

[9] *People v. Scoggins*,, 240 P.3d 331, 333 (Colo. App. 2009) (qoting *Robbins v. People*, 107 P.3d 384, 388 (Colo. 2005)).

N.Y. 1986) (same). Because turnover claims are equitable in nature, *see Walker v. Weese*, 286 B.R. 294, 299 (D. Md. 2002) (turnover claim "fairly characterized as an equitable claim"); *In re Warmus*, 252 B.R. 584, 587 (Bankr. S.D. Fla. 2000) (turnover claims, "firmly rooted in protecting and preserving property of the [estate], ... are clearly and uniquely equitable claims under the Bankruptcy Code") (citations omitted); *In re Kabler*, 230 B.R. 525, 526 (Bankr. E.D. N.C. 1999) ("Turnover is an equitable remedy"), they are subject to laches. *Algrant v. Evergreen Valley Nurseries Ltd. Partnership*, 126 F.3d 178, 186 n. 3 (3rd Cir. 1997) ("An action brought in equity is governed by the doctrine of laches.") (citing *Russell v. Todd*, 309 U.S. 280, 287, 60 S.Ct. 527, 84 L.Ed. 754 (1940)). *See also Erkins v. Bryan*, 785 F.2d 1538, 1543 (11th Cir.1986) ("Policies underlying the creation of federal equitable claims are not well served by applying rigid limitations; therefore, federal courts considering federal equitable claims should rely on equitable principles.") (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946)).

"The party asserting laches as a defensive bar must establish (1) an inexcusable delay in bringing the action and (2) prejudice." *United States Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 208 (3rd Cir. 1999) (citations omitted). "To establish prejudice, the party raising laches must demonstrate that the delay caused a disadvantage in asserting and establishing a claimed right or defense; the mere loss of what one would have otherwise kept does not establish prejudice." *Id*. (citation omitted). While statutes of limitations do not directly apply to equitable claims such as the turnover claim, a limitations period on an analogous claim for legal relief is highly relevant to a laches analysis. As we said in *E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69 (3rd Cir. 1984), "[i]f a statutory limitations period that would bar legal relief has expired, then the defendant in an action for equitable relief enjoys the benefit of a presumption of inexcusable delay and prejudice. In that case, the burden shifts to the plaintiff to justify its delay and negate prejudice." 735 F.2d at 80 (citations omitted).

The bankruptcy and district courts concluded that the claim at law analogous to the Trustee's turnover claim arises under 11 U.S.C. § 549(a), which creates a cause of action in a trustee to avoid an unauthorized post-petition transfer of estate property. Section 549(a) claims are subject to § 549(d), which provides that § 549(a) claims "may not be commenced after the earlier of - (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed." 11 U.S.C. § 549(d). The Trustee's turnover claim targets a post-petition transfer of funds by Continental to Ganz. Section 549(a) expressly creates a cause of action by which to seek avoidance of post-petition transfers, a cause of action clearly analogous to the turnover claim here. Consequently, *Great Atlantic & Pacific Tea Co.* dictates that we consult the statute of limitations applicable to a § 549(a)

claim-the two-year period set forth in § 549(d)-in determining whether to shift to the Trustee the burden of proving excusable delay and the absence of prejudice.[10]

In this case, the analogous time limit in § 549 (2 years or the time the case is closed or dismissed) has not expired. While a prompt motion for turnover following the Meeting of Creditors may have been preferred by the Debtor, the Trustee only waited four months to file his Application and four and one-half months to file his Motion. Whether the Trustee filed the Motion the day after the Meeting of Creditors or on the date he actually did, the Debtor's discharge would have entered and no other substantive change to this case would have occurred. Given the volume of cases administered by Chapter 7 trustees, the Court does not find four or five months to be "inexcusable delay." Further, the Debtor has not shown she suffered any economic or evidentiary prejudice because of the delay. Therefore, the Trustee's claim is therefore not barred by the doctrine of laches.

### B.     Equitable Ownership and the Lexus

With respect to the Lexus, the Debtor argues the Trustee's Motion must be denied because the Debtor's brother, Alex Viveros, is the true, equitable owner of the vehicle. However, it is clear from a review of the schedules and amendments on file that the Debtor did not include any indication of equitable ownership by Alex Viveros or that the Lexus is located in California. The Lexus is listed as an asset on her Schedule B and the location of the Lexus is listed as her address in Colorado on her Schedule C. The Debtor claims this was a misunderstanding between her and the person in her attorney's office who obtained her information to be included on the Schedules.

At the conclusion of the evidentiary hearing on this matter, the Court ordered each party to file a statement of authority, citing any statutes or case law the parties wished the Court to consider. The Court has considered each case and statute cited by the parties and finds the case of *Hill v. Koching et al.* (*In re Garberding*), a decision by the Honorable Sidney B. Brooks of this District, the most pertinent and persuasive.[11]

In G*arberding*, the chapter 7 trustee filed a complaint against the debtor (Garberding) and her boyfriend (Koching) seeking turnover of a vehicle. The debtor had listed the vehicle on her Schedule B but stated the vehicle was "titled in Debtor's name but paid for an [sic] used by Debtor's boyfriend." The debtor also claimed the vehicle as exempt on Schedule C. The debtor's boyfriend had possession of the vehicle and used the vehicle, claiming it belonged to him and was not property of the debtor's bankruptcy estate. Likewise, the debtor maintained she only held "bare legal title" while her boyfriend was the "beneficial or equitable" owner. The parties stipulated the loan on the vehicle was obtained by the debtor because her boyfriend could not obtain such financing. Of the forty-eight payments required under the loan, seven were made

---

[10] *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 336-338 (3rd Cir. 2004).

[11] *Hill v. Koching et al.* (*In re Garberding*), 338 B.R. 463 (Bankr. D. Colo. 2005).

from the debtor's bank account. However, her boyfriend reimbursed her for those payments. One other payment was made by the debtor's parents as reimbursement for work the debtor's boyfriend had done in the parents' home. The other forty payments were made directly by the debtor's boyfriend. Further, the debtor never paid for insurance or maintenance on the vehicle and never drove the vehicle, although the loan and the title were in the debtor's name. Thus, Judge Brooks was presented with a similar fact pattern and legal issue as the case at hand. Judge Brooks framed the issue as follows: "whether the Plaintiff, in accordance with 11 U.S.C. § 544(a), may avoid any equitable interest that Defendant Koching has in the [vehicle] so as to make the [vehicle] —the legal and equitable interests therein—property of the estate."[12]

Judge Brooks discussed Judge Elizabeth E. Brown's decision in *In re Richards*[13] and the tension between § 541 and § 544. Specifically, after quoting § 544, Judge Brown stated, "[e]ssentially, under section 541(d), the trustee does not acquire greater rights than the debtor had to the property, in seeming contradiction of the trustee's avoidance powers [under 544(a) ] and Section 541(a)(3), which includes avoided transfers among property of the estate."[14]

Judge Brooks then summarized Judge Brown's opinion in *Richards*, and contrasted it with the case before him,

> Judge Brown went on to discuss the split in the case law dealing with this dilemma, noting that the Tenth Circuit has *not* ruled directly on the seeming contradiction between 11 U.S.C. §§ 541(a)(3) and (d) and 544(a). In her final analysis, she concluded that the majority view was the best approach; that is, the trustee's strong-arm powers under 11 U.S.C. § 544 take precedence over a party claiming a beneficial interest in property titled in the name of the debtor.
>
> This Court concurs with Judge Brown's conclusions resolving the conflict between 11 U.S.C. §§ 541 and 544. In other words, a trustee, *under appropriate facts and circumstances*, has the ability to exercise his strong-arm powers to recover, for the benefit of the estate, property that the debtor held subject to an equitable lien, *as long as the trustee, as a hypothetical lien creditor, would prevail under state law against an equitable lien claimant*.
>
> Nevertheless, the inquiry does not stop here. The issue presented to this Court and the facts herein are not identical to those in the *Richards* case and require further examination and discussion. In *Richards*, the trustee was attempting to avoid an unperfected lien of a creditor. Here, the Defendant Koching does not assert that he holds a lien of any sort in the [vehicle]. Instead, he is asserting *ownership in*—that

---

[12] *In re Garberding*, 338 B.R. at 465-466.

[13] *In re Richards*, 275 B.R. 586 (Bankr. D. Colo. 2002).

[14] *In re Garberding*, 338 B.R. at 466, (quoting *In re Richards*, 275 B.R. at 589-593).

is, *beneficial ownership and economic interest in*—the [vehicle]. The cornerstone of the analysis herein is whether the Plaintiff would prevail under state law.[15]

Judge Brooks went on to find, under Colorado law, "a certificate of title shall be *prima facie* evidence of the matters contained therein."[16] However, this is a rebuttable presumption and a certificate of title does not conclusively determine ownership. Judge Brooks found the vehicle was not property of the estate, and based on the facts before him the debtor's claim of an exemption in the vehicle was not an admission that the vehicle was property of the estate. Based on these findings, the trustee's complaint was denied and dismissed.

Similarly, in the case at hand, despite the disclosures on the Schedules regarding ownership and location,[17] both the Debtor and Alex Viveros testified that Alex Viveros made the down payment on the Lexus, has made all subsequent car payments, has maintained insurance on the Lexus in his name, and has been in possession of the Lexus in California since it was purchased under the Debtor's name and credit. Given the Debtor's primary language is Spanish and she is unfamiliar with the bankruptcy process, the Court finds the Debtor's explanation regarding the misunderstanding between her and her attorney's office credible and plausible.

Because the Lexus is in California, the parties have cited to California case law, as well as the California Vehicle Code. For purposes of the issue before the Court, the Court finds the relevant California law is substantially similar to Colorado law - a certificate of title is the primary evidence of ownership, but is not conclusive.[18] Under the facts of this case and the analysis in *Garberding*, it is clear Alex Viveros is the true owner of the Lexus and thus such vehicle is not property of the bankruptcy estate.

## C.    The Audi

There is no dispute the Audi is property of the bankruptcy estate, was scheduled with a value of $5,245 and an exemption claim of $5,000, leaving equity of $245 which constitutes property of the estate. Accordingly,

---

[15] *In re Garberding*, 338 B.R. at 466-467 (emphasis in original).

[16] *In re Garberding*, 338 B.R. at 467.

[17] The Trustee further pointed out the Statement of Financial Affairs, question 3, discloses monthly payments for March, April and May 2003 to WFS Financial/Wachovia Dealer Services for the Lexus auto payment of $389, totaling $1,167.00. However, the Debtor testified she did not make these payments. The Trustee also pointed out the Debtor stated, "none" in response to the Statement of Financial Affairs, question 14, "Property held for another person."

[18] *See U.S. v. Simpson*, 538 F.2d 1377, 1379 (9th Cir. 1976) ("While the [certificate of ownership] is not conclusive on the issue of title, it is important evidence."), *Caccamo v. Swanston*, 212 P.2d 246 (Cal. App. 1 Dist. 1949) ("The certificate is evidence of title, although not conclusive on the subject."), and *Everly v. Creech*, 294 P.2d 109, 113-114 (Cal. App. 1956).

IT IS ORDERED the *Trustee's Motion to Compel Turnover of Property of the Estate* is DENIED with respect to the Lexus.

IT IS FURTHER ORDERED the *Trustee's Motion to Compel Turnover of Property of the Estate* is GRANTED with respect to the Audi and the Debtor shall immediately turn over to the Trustee the Audi or the $245 in equity.

Dated June 7, 2011

BY THE COURT:

*/s/ Michael E. Romero*
Michael E. Romero
U.S. Bankruptcy Judge